569 P.2d 227

**In the Matter of a Member of the State Bar of Arizona, David I. KALI, Respondent.**

**No. SB–49–2.**

Supreme Court of Arizona, In Banc.

Sept. 8, 1977.

Richard D. Crites, Tucson, State Bar Counsel.

Rees, Mercaldo & Smith, P.C. by Paul G. Rees, Jr., Tucson, for respondent.

286

GORDON, Justice:

This is an original proceeding for disciplinary action against Attorney David I. Kali. Respondent was admitted to practice in Arizona in 1969 and practices in Tucson. The Board of Governors of the State Bar of Arizona recommends to this Court, pursuant to Rule 36(d), Rules of the Supreme Court, that respondent be suspended from the practice of law for a period of two years based upon its Findings and Recommendations dated March 26, 1976, which have been filed with this Court.

Respondent asserts that the findings of the Board of Governors are not supported by the evidence.

When the findings of a local administrative committee are contested, this Court must, as a trier of the facts as well as the law, find whether the evidence presented to the committee clearly and convincingly supports them. *In Re Kastensmith,* 101 Ariz. 291, 419 P.2d 75 (1966).

Although respondent contends that many of the findings made by the Local Administrative Committee and the Board of Governors are misleading, incomplete and unsupported by evidence, the record is abundantly clear that: Respondent represented Dr. Metz Wright, Jr. and his pension fund for some time prior to the incident in question; they were social acquaintances, belonged to the same Air National Guard Unit, flew together and respondent was Dr. Wright's patient. Dr. Wright was a client of respondent on a continuing basis. At the same time, respondent had Mr. Willis as a client in other matters, including representing him in a federal tax law suit, and was aware that he was short of funds at the time in question. Also, Mr. Willis owed respondent's law firm approximately $25,000 in unpaid legal fees, for which respondent was pressing him. Respondent knew that for tax reasons beneficial to Dr. Wright in August 1973, the time was ripe to divest Dr. Wright's pension fund of approximately $40,000 by loaning it out to someone at as high an interest rate as possible. This had been done by respondent on other occasions in the past with Dr. Wright's approval and with him leaving the details and paper-work primarily to the respondent. Because of his attorney-client relationship with both Dr. Wright and Mr. Willis, respondent knew that Mr. Willis needed money and that Dr. Wright's pension fund had money to lend and that Dr. Wright would probably approve a properly documented collaterally secured loan to anyone he would recommend. Respondent approached Mr. Willis about the rather large fee owed to his law firm and suggested that Willis reduce it by paying at least $10,000. Willis advised respondent that he didn't have the funds at the time. Respondent suggested that he could negotiate a loan for Willis of approximately $40,000 to come from another client, (Dr. Wright) and that if he were able to do so, respondent wanted $10,000, of that loan to be paid to his law firm to apply on Willis' fee. Willis agreed. Collateral was discussed. Willis suggested the use of some gems that he had, for which he had a written appraisal (which later proved grossly overstated) from someone who respondent did not know in the State of Washington and whose qualifications were not checked by respondent. This appraisal showed the gems being of a value in excess of $110,000.

Without affirmatively disclosing that the proposed borrower was a client of respondent and that the borrower would be paying respondent's law firm $10,000 of the loan to apply on his unpaid legal fees, respondent suggested to Dr. Wright that the pension fund loan out $40,000 at at least 10% interest and possibly more, secured by the gems as collateral which he told Dr. Wright had been appraised at over $110,000 in value. Dr. Wright agreed, and respondent prepared the documentation for the loan. The terms of the obligation caused the interest rate to be usurious—over 15% per annum. Respondent was aware of this and did not advise either the borrower or the lender of the possible legal consequences to either party in the event the interest rate were challenged by the borrower. Also, respondent understood that any loan that Dr. Wright would make

should be secured by collateral worth at least double the amount loaned. Respondent had no expertise in the field of evaluating gems or jewels. Even so, and in view of the unusual type of collateral, respondent took no steps to corroborate the written appraisal furnished by Mr. Willis.

The loan was consummated, and as we might suspect, it was not repaid. After default, respondent got a local appraisal of the gems which showed their worth to be less than $1,300. He then advised Dr. Wright that the collateral given to secure the loan was not worth what he originally was led to believe and that he, (Dr. Wright) should seek other counsel to pursue whatever legal remedies he had against Mr. Willis.

It is obvious to the members of this Court that at the time of the negotiation of the loan in question as evidenced by the manner in which he represented both of his clients, respondent's professional judgment was being clouded by self-interest. We find his conduct to be in violation of Disciplinary Rule 5–101(A),[1] Disciplinary Rule 5–105(A), (B), and (C)[2] and Disciplinary Rule 5–107(A)(2)[3] of the Code of Professional Responsibility as made applicable to attorneys in Arizona under Rule 29(a), Rules of the Supreme Court of Arizona.

At the time of the suggestion of the loan by respondent to Dr. Wright, at a minimum, respondent had a duty to make clear to him by full disclosure the name of the person who would be the borrower, and the fact that he (the borrower) was presently a client of respondent who owed his firm money, and that $10,000 of the funds loaned would be applied to respondent's unpaid fee. Also the possible effect of that dual representation should have been explained, including the possible forfeiture of all interest in excess of 10% if disputed by the borrower. The consent of his client, Dr. Wright, which is necessary before respondent could have ethically represented both parties, would not have been a knowledgeable consent without the foregoing matters being before him. As they were not explained, and Dr. Wright's consent was not obtained, respondent's conduct was a clear violation of the previously cited disciplinary rules of the Code of Professional Responsibility in Arizona. Whether Willis did in fact raise the defense of usury we hold to be immaterial.

■ In addition to his challenge to the sufficiency of the evidence to support the recommendation of the State Bar, respondent contends that he was denied due process in the proceedings before Local Administrative Committee 4–D and the Board of Governors. He does not complain that the notice given or the hearings held in any

1. "DR 5–101. *Refusing Employment when the Interests of the Lawyer May Impair His Independent Professional Judgment*

"(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

2. "DR 5–105. *Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer*

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be affected by his representation of another client, except to the extent permitted under DR 5–105(C).

"(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interests of each *and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.*" (Emphasis supplied.)

3. "DR 5–107. *Avoiding Influence by Others Than the Client*

"(A) Except with the consent of his client after full disclosure, a lawyer shall not:

* * * * * *

"(2) Accept from one other than his client any thing of value related to his representation of or his employment of his client."

way were improper under the rules, or that he was at any stage denied any opportunity to offer oral or documentary evidence, or to cross-examine witnesses, or file pleadings. His sole contention is that the Findings and Recommendations of the Committee and the Board of Governors were tainted by bias or prejudice because Local Administrative Committee 4–D, which heard the complaint in question, had also heard a complaint in a different charge of unprofessional conduct against respondent the year before, and that that Board had made a recommendation of discipline to the State Bar which was reduced in severity by the Board of Governors.

Prior to the hearing on the complaint in question, and for these reasons, the respondent requested that this complaint be transferred to a different local administrative committee under Rule 32(b), Rules of the Supreme Court. That request was denied by the Board of Governors. Also, respondent contends that without his knowledge certain coercive, improper correspondence from the President of the State Bar was allowed to be placed in the Committee's files, as well as several "scurrilous and derogatory" letters from a person concerned in another charge of unethical conduct against respondent which was heard by this Committee and later dismissed by the Board of Governors as being unsupported by the evidence.

Although we feel under the circumstances it might have appeared fairer to respondent for the State Bar to have transferred the latter matter against respondent to a different committee, and we suggest it in the future, this Court has made an independent evaluation of the transcript of the evidence taken at the hearing before Local Administrative Committee 4–D and the hearing before the Board of Governors, and find that the aforementioned acts of professional misconduct were adequately supported in the record by clear and convincing evidence.

Respondent having been previously censured by this Court by order in SB–49 on March 19, 1974, we feel the recommended length of time of suspension is justified. Therefore, it is ordered that respondent David I. Kali, is hereby suspended from the practice of law in Arizona for a period of two years, commencing thirty days after the issuance of the mandate or order in this case. Further, it is ordered, that the costs incurred by the State Bar in prosecuting this matter to wit, $3,327.37 are hereby assessed against respondent. Further ordered that respondent shall comply with the provisions of Rule 37(h), Rules of the Supreme Court as applicable.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.