606 P.2d 808

**In the Matter of a Member of the State Bar of Arizona, David I. KALI, Respondent.**

**No. SB–49–4.**

Supreme Court of Arizona,
In Banc.

Jan. 16, 1980.

Rehearing Denied Feb. 26, 1980.

Lawrence M. Hecker, State Bar Counsel, Tucson, for petitioner.

David I. Kali, Tucson, in pro. per.

O'Dowd & Burke by Bruce A. Burke, Tucson, for respondent.

GORDON, Justice:

This is a proceedings for disciplinary action against David I. Kali, an attorney, pursuant to Rules 33 through 37, Rules of the Supreme Court, 17A A.R.S. Mr. Kali was admitted to practice law in Arizona in 1969. On two prior occasions this Court has been called upon to measure Mr. Kali's conduct against the ethical standards for lawyers in Arizona. On March 19, 1974, this Court censured Mr. Kali for: (1) communicating directly with the opposing party in a domestic relations case, without the consent of the opposing party's counsel; and (2) obtaining defaults in two separate cases on the basis of the defaulting parties' failure to file a timely answer, although Mr. Kali had agreed to allow the parties extensions of time to answer.

On September 8, 1977, in the case of *In Re Kali*, 116 Ariz. 285, 569 P.2d 227, Mr. Kali was suspended from the practice of law in Arizona for a period of two years for violating several Disciplinary Rules governing conflicts of interest which arose when he arranged self-serving business dealings between two of his clients.

In the present case, the following are the pertinent findings of the Local Administrative Committee, hereinafter called "Committee":

## "FINDINGS OF FACT

\*    \*    \*    \*    \*    \*

"2. Respondent was retained in 1972 by Mr. Robert Sudduth to represent him in regard to the sale of a trailer park owned by Sudduth.

"3. From that time until January of 1976, Mr. Sudduth believed that Respondent was his attorney and he consulted him in regard to various matters. \* \* \* The Committee finds that Mr. Sudduth had a reasonable basis for his belief that Respondent was acting as his attorney at the time of the questioned transaction in August of 1974 and that an attorney-client and fiduciary relationship existed at that time.

\*    \*    \*    \*    \*    \*

"6. Based upon his testimony and demeanor, the Committee finds that Mr. Sudduth has only limited knowledge of real estate, business and tax matters and is not competent to make sophisticated legal decisions in regard to the transaction under consideration.

"7. In August of 1974, Mr. Sudduth had a net worth in excess of $600,000 \* \* \*.

"8. Sometime prior to August 1, 1974 Mr. Sudduth was in Respondent's office and mentioned to one of Respondent's associates that he had $100,000 that he wanted to invest.

"9. Shortly thereafter, Respondent suggested that Mr. Sudduth loan him the money.

"10. On August 1, 1974 Respondent signed a note in an amount of $102,000 payable to Robert Sudduth. \* \* \*

"11. The note was secured by an assignment of beneficial interest in two trusts that held legal title to two buildings owned by respondent. The assignment was executed on August 7, 1974. \* \* \*

"12. At the same time, a management agreement in regard to the buildings was drafted \* \* \*. The management agreement gave Respondent broad power to control the property and to expend money for improvements. None of the documents needed to complete the transaction were either prepared by or reviewed by independent counsel representing Mr. Sudduth. At the time the documents were executed Mr. Sudduth did not understand the implications of the powers given Respondent by the agreements. The arrangement created by Respondent when coupled with the unwritten 'buyback' agreement was complex, vague and entailed risks that could not have been fully understood by Mr. Sudduth.

"13. In return for Respondent's promissory note, Mr. Sudduth gave Respondent $100,000 on August 1, 1974. The face amount of the note ($102,000) was designed to give Mr. Sudduth a 14% return, 2% in excess of the legal rate.

"14. Mr. Sudduth believed that the August 1974 transaction was a loan but under-

stood that in some way he was going to obtain income tax benefits as well as 14% interest.

"15. Respondent led Mr. Sudduth to believe that the transaction was a loan and not a sale and toward that end made payments designated as 'interest'.

"16. Respondent nevertheless represented to the Internal Revenue Service that the transaction was a sale of the beneficial interest in the two trusts and thereby obtained substantial tax benefits for Mr. Sudduth.

"17. Mr. Sudduth was not paid the balance then due when the note came due. When Mr. Sudduth demanded payment Respondent claimed an offset of $39,000 for services rendered and money advanced under the management agreement.

"18. Respondent then caused the trustee to execute a note against one of the trusts for approximately $39,000 claiming authority under the management agreement. The effect of that lien was to encumber the trusts and the security for the note. Mr. Sudduth was not aware of the claimed right of Respondent to make charges against the 'loan'.

"19. Mr. Sudduth then retained other counsel to collect the note due from respondent. His new counsel, John P. Sullivan, Esq., found it necessary to file suit. The suit was ultimately settled by Respondent's payment to Mr. Sudduth in the amount of $115,000.

"20. Respondent did not explain to Mr. Sudduth the various risks that were involved in the transaction in question.

"21. Respondent misrepresented the nature of the transaction leading Mr. Sudduth to believe it was a loan secured by real estate. * * * The Committee finds that the transaction was a hybrid loan/sale designed to be manipulable to Respondent's advantage.

"22. Respondent did not advise Mr. Sudduth to seek outside counsel. The only outside advice received by Mr. Sudduth came from a Certified Public Accountant who had been retained by Respondent and who had no independent relationship with Mr. Sudduth.

"23. Respondent abused and took advantage of the trust and confidence placed in him by Mr. Sudduth.

\* \* \* \* \* \*

"26. Respondent has violated DR 5–104(A) by entering into a business relationship with a client when the client expected the Respondent to exercise his professional judgment for the client's protection and the client was not aware of differing interests between the parties and was not informed of them.

"27. Respondent has violated the rule of *In re Staples*, 259 Or. 406, 486 P.2d 1281 (1971) by not advising Mr. Sudduth of his obvious need for independent counsel.

"28. Respondent has violated the rule of *Matter of Weiner*, [120 Ariz. 349, 586 P.2d 194 (1978)] * * * by failing to insure that the transaction was fair to his client and by failing to fully disclose the nature of the transaction and the conflicting interests of the parties." (Transcript citations omitted.)

"RECOMMENDATIONS

"The Committee has noted Respondent's previous disciplinary problems and the similarities between this matter and the facts of *Matter of Kali*, 116 Ariz. 285, 569 P.2d 227 (1977) in which Respondent was suspended for two years and *Matter of Weiner*, supra. The Committee therefore recommends that Respondent David I. Kali be disbarred."

Upon review, the Disciplinary Board of the State Bar of Arizona accepted the findings of the Committee, but the Board recommended that respondent be indefinitely suspended from the practice of law in Arizona, rather than be disbarred, with the suspension to commence immediately after the termination of his present suspension.

After objecting to the findings and recommendations of the Board, respondent filed briefs in this Court in propria persona. Respondent claimed that the State Bar Proceedings had deprived him of procedural due process and the findings of the Com-

mittee and Board were not supported by the requisite clear and convincing evidence. At oral argument before this Court, respondent, through counsel, waived his due process arguments and withdrew his objections to the findings of the Committee and Board. Respondent's counsel even conceded the appropriateness of the recommendation of the Board to indefinitely suspend respondent from the practice of law. His only argument, directed to what he termed the "heart of the case," concerned the time at which the recommended indefinite suspension should take effect.

Before considering the issue of sanction, we must decide whether respondent has been guilty of improper or unethical conduct. Although it is no longer a contested issue, upon a full review of the proceedings herein we conclude that the findings of fact made by the Committee and accepted by the Board are supported by clear and convincing evidence. Respondent violated DR 5–104(A), Rules of the Supreme Court, Rule 29(a), 17A A.R.S., in precisely the manner described in paragraphs 26, 27 and 28 of the Committee's findings. Further, we specifically approve the following portion of the holding of the Supreme Court of Oregon in *In Re Staples*, 259 Or. 406, 486 P.2d 1281 (1971):

> "Borrowing money from a client is the same as a fiduciary contracting with the beneficiary of his trust and is patently improper unless the beneficiary is advised to seek independent advice upon the advisability of entering into such a contract; otherwise, the lawyer is serving two masters, his personal interest and that of his client." 259 Or. at 410, 486 P.2d at 1283.

We next address the issue of sanctions. The Disciplinary Board recommended that respondent's indefinite suspension commence after the expiration of his present suspension. Respondent disagrees and suggests that the indefinite suspension should commence on the same date as and run concurrently with the two year suspension ordered by this Court in 1977, because the conduct complained of in the present matter occurred at approximately the same time as the incident that caused his prior suspension. He reasons that because he has suffered remorse for over five years since both of the alleged misdeeds and because he has made full restitution to Mr. Sudduth, no additional sanction should be imposed. Respondent maintains that the protection of the public, and not punishment, is the aim of attorney discipline. We choose not to follow respondent's suggestion, because if we did, he would presently be entitled to apply for reinstatement on both suspensions. *See* Rule 41(a), Rules of the Supreme Court, 17A A.R.S. Such a result would not, in our opinion, be consistent with our obligations in such matters.

Although the recommendations of the Disciplinary Board are not binding upon this Court, *see In re Tribble*, 94 Ariz. 129, 382 P.2d 237 (1963), they are entitled to serious consideration. *See In re McDonald*, 56 Ariz. 120, 105 P.2d 1114 (1940). We believe the recommendation of the Disciplinary Board is most appropriate, because it treats each offense separately and appears to include consideration of *all* the purposes of attorney discipline, rather than merely one. As stated in *In re Richey*, 76 Ariz. 152, 261 P.2d 673 (1953):

> "The purpose of disciplining lawyers is the protection of the public, the profession and the administration of justice, and not the punishment of the persons disciplined, * * *." 76 Ariz. at 154, 261 P.2d at 674.

Therefore, it is ordered that respondent David I. Kali be suspended from the practice of law indefinitely, which term of suspension shall commence thirty days after the entry of the mandate or order in this matter. Further, the Court fixes the sum of $501.25 as the costs and expenses to be paid by the respondent before he may be reinstated.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.